Farmers Savings Bank of Murray, Appellee, v. Planters Terminal Elevator Company et al., Appellants.

**VENUE: Suit in Foreign County—"Office or Agency."** A corporation 1 which causes its agent to go into a foreign county and to establish himself at a hotel therein, with authority to take and negotiate promissory notes in effecting sales of corporate stock of the corporation, thereby creates an "office or agency" in said county "for the transaction of business," and may be sued in said county for the return of the consideration paid for a worthless note negotiated in said county by the agent. (Sec. 11046, Code of 1924.)

**TRIAL: Instructions—Establishing Agency.** The thought that a plaintiff 2 tiff must establish the authority of an alleged agent of the defendant's before the defendant can be bound by what the alleged agent says and does, is sufficiently expressed in an instruction which requires the jury to find that defendant acted "by their duly authorized agent."

**TRIAL: Instructions—Applicability to Pleading—Voluntary Issues.** The court may very properly instruct on nonpaper issues voluntarily and mutually litigated by the parties.

**PRINCIPAL AND AGENT: Authority of Agent—Receipt of Money.** Principle reaffirmed that the receipt by a duly authorized agent of money belonging to the principal is, of necessity, a receipt by the principal.

**PRINCIPAL AND AGENT: Unauthorized Acts—Ratification—Knowledge.** The knowledge of a fiscal agent of a corporation in charge of sales of corporate stock of his corporation that an authorized subagent had received payment for stock sold, is presumptively the knowledge of the corporation.

**DAMAGES: Measure of Damages—Instructions—Assumption of Fact.** An instruction which is a technically incorrect statement of the measure of damages is harmless when, if a correct instruction had been given, the verdict of the jury must have been the same as found by the jury under the incorrect instruction.

Headnote 1: 14a C. J. p. 794. Headnote 2: 2 C. J. p. 966; 38 Cyc. p. 1595. Headnote 3: 38 Cyc. p. 1616. Headnote 4: 2 C. J. p. 561. Headnote 5: 2 C. J. p. 859. Headnote 6: 4 C. J. p. 1043.

*Appeal from Clarke District Court.*—Homer A. Fuller, Judge.

### June 25, 1925.

### Rehearing Denied September 25, 1925.

Suit on promissory note. Defense of fraud. Judgment against the defendants. Defendants appeal.—*Affirmed.*

*Walter L. Stewart, George F. Malcolm, N. L. Friedman,* and *Lloyd Thurston,* for appellants.

*O. M. Slaymaker,* for appellee.

Albert, J.—The Planters Terminal Elevator Company was a corporation organized under the Iowa law. It had a contract with the defendant Parrott to sell its stock at a fixed fee. One Burdette was engaged in selling the stock of the company, and sold to one E. Paul Jenks $10,000 worth of said stock, for which Jenks made his

1. Venue: suit in foreign county: "office or agency."

two "myself" notes for $7,000 and $3,000, respectively. It is the latter note which is involved in this controversy.

Burdette was selling this line of stock with some other lines of stock in Clarke County about the time in controversy, and was staying at a hotel in Osceola in Clarke County, which is the same county in which the town of Murray is located, and which is the home county of the plaintiff bank. When this suit was instituted, the defendants filed a motion and affidavit to transfer to Polk County, which is the residence of both of the defendants. Counter affidavits were filed, and the matter was heard by the court and determined adversely to the defendants. This ruling is the first error assigned.

Section 3500 of the Code of 1897 reads as follows:

"When a corporation, company or individual has an office or agency in any county for the transaction of business, any actions growing out of or connected with the business of that office or agency may be brought in the county where such office or agency is located."

It is claimed under this section that the defendants had no office or agency in Clarke County, and that an action on the purchase of this note did not grow out of or was not connected with the business of such office or agency. That the buying of this note by the plaintiff bank from Burdette occurred in Clarke County, is undisputed. It is equally true that there is no dispute over the proposition that the defendants were both residents of Polk County at all times involved herein.

While somewhat hazy, the affidavits tend to show that, at and about the time plaintiff bank bought this note from Burdette, Burdette was staying at a hotel in Osceola, and was engaged in selling stock in the defendant elevator company. The first question, therefore, is whether or not, under the above quoted section of the statute, there was an office or agency of the defendant in Clarke County; and secondly, if so, whether or not this transaction with the bank grew out of or was connected with the business of that office or agency. Under the holdings of this court heretofore made, that such office or agency existed is not within the field of dispute. *Burke v. Dunlap*, 185 Iowa 949; *Milligan v. Davis*, 49 Iowa 126; *Wickens v. Goldstone,*

97 Iowa 646; *Wood v. Rice & Fogarty,* 118 Iowa 104; *Mitchell v. Lang & Co.* (Iowa), 112 N. W. 87 (not officially reported); *Gilbert v. McCullough,* 140 Iowa 362.

The affidavits herein filed by the defendants in general terms deny that defendants maintained an office or agency in Clarke County; whereas, the plaintiff's counter affidavits show that Burdette was an agent of the Planters Terminal Elevator Company and Parrott in the sale of this stock, and was authorized to take notes therefor and to sell said notes. The allegations in these affidavits filed on behalf of the plaintiff are nowhere denied by the defendants in the showing made by them. If these matters so alleged are true, then it is equally undisputable that the sale of this note to the plaintiff bank grew out of and was connected with the business and office or agency of defendants in Clarke County. We are compelled to hold that, at this stage of the proceedings, under the showing made to the court, there was no error in refusing to transfer the case to Polk County.

The plaintiff brings this action against the defendants for damages, alleging fraud and deceit on the part of Burdette, who, it alleges, was the defendants' agent in this transaction with the bank. It claims further that the said note proved to be worthless, and asks judgment against the defendants for $3,754, with 6 per cent interest thereon from the 21st day of July, 1922. The plaintiff alleges that the promissory note in evidence here was procured in the first instance from the maker, on November 19, 1919, through false and fraudulent representations, stated in ten different grounds in the petition, and further says that the note was without consideration, and, being payable to the maker, that the indorsement of his name on the back of the note was forgery; that, therefore, said note was worthless.

The plaintiff alleges that fraud was committed by said agent in the sale of the promissory note to plaintiff, in the following grounds: That Burdette represented to the plaintiff (a) that said note was given and obtained by the Planters Terminal Elevator Company in a legitimate transaction; (b) that the signature of said note and the signature indorsed thereon were valid; (c) that there was no defense to said note. Defendants' answer is a general denial. The issue thus made was tried to a jury,

with the result above indicated. In the progress of the trial, several witnesses were permitted to testify as to what Burdette said about whom he was selling the note for, and what the extent of his authority was; also, defendant Parrott's statement of Burdette's relation with the defendant company and Parrott's relation to the defendant company. The admission of this testimony is assigned as error. In the first place, it is not available because no objection was made to any of this testimony; but, it being assumed that it was objected to, the argument raises the question that it was not admissible because there is no showing in the record that Burdette was the agent of the defendant. Counsel are mistaken in respect to this situation, because Downs, who was vice president of the plaintiff bank at the time, testifies that he discussed the matter of buying this note with Oxford, one of the officers of the Murray bank, before it was bought; and that he called Parrott over the telephone, told him that they were contemplating the purchase of said note, and asked if it was all right to buy the note from Burdette and make settlement; and that Parrott answered that it was. He described to Parrott the identical note in controversy, and Parrott told him that Burdette was the agent of Parrott and the Planters Terminal Elevator Company, and that he carried a letter to that effect. He told Parrott the amount of the note and what Burdette said it was given for, and Parrott said that it was all satisfactory.

Most of the errors about which complaint is made, turn around this claim on the part of the defendants, that there was no showing that Burdette was the agent of the defendants. As said, the above testimony from Downs is the connecting link, and tends to show this agency. Whether it was true or not was a question for the jury. It is too well settled to require authority that the agency of Burdette for the defendants could not be proved by witnesses who testify to declarations of such agency made by Burdette; but this rule has no application here by reason of the matters above referred to.

The defendants, at the close of the testimony of plaintiff, moved for a directed verdict. Matters contained in the motion, without being specifically pointed out, will be disposed of in the course of this opinion.

The defendants complain of Instruction 5, which is too lengthy to set out herein, but which sums up the things which the plaintiff must prove in order to establish a case.  The objection to it is that it does not require plaintiff to establish the agency of Burdette, in order to bind the defendants.  This attack on the instruction is unwarranted, because one of the requirements of the instruction is that the plaintiff prove that the defendants, "by their duly authorized agent," falsely or fraudulently stated and represented to the plaintiff that said note was obtained, etc. This covers the objection made by the defendants.

2. TRIAL: instructions: establishing agency.

Defendants' objections to Instructions 6, 9, and 11 have already been covered by what is heretofore said.

Objection is made to Instruction 9½ of the charge of the court, because it submits issues to the jury which are not in the case.  The latter division of No. 9½ says to the jury, in substance, that, if the defendants received and retained proceeds of the sale of the note knowing that it was received from the sale of said note, then the defendants would be estopped to deny that said Burdette had authority to sell or negotiate said note, and his acts in relation to said sale would be as binding upon said defendants as though he had been given express authority to negotiate the sale of said note.

3. TRIAL: instructions: applicability to pleading: voluntary issues.

It is urged first that this instruction submits an issue to the jury that was not pleaded in the case.  While it is true that the pleadings do not raise such an issue, yet issue was raised and met by both sides in the trial of the case; hence the issue was a voluntary one, met by the evidence, and therefore was properly instructed upon.

Secondly, it is urged that the instruction is erroneous in that the company never received any of the proceeds from the sale of said note.  It is an issue in the evidence whether or not Burdette was the agent of the company, which was for the jury to determine.  If he was, then receipt of the proceeds of the note by him would be a receipt by the company.  There was evidence on this question, and it was for the jury to determine.

4. PRINCIPAL AND AGENT: authority of agent: receipt of money.

Lastly, it is urged that, even though the company may have received the benefits of this transaction, it was received without knowledge. · It is admitted in the record that Parrott was the fiscal agent of the company, in charge of the sale of the stock and the settlements therefor. Downs testifies that, before he authorized the cashier of plaintiff bank to purchase. said note, he called Parrott over the telephone, giving him a description of the note; and that he was advised by Parrott that Burdette had authority to sell said note, and in substance was told that it would be all right for the bank to buy the note, Downs having given him a full description of the note and the signer thereof. Parrott thus being agent of the company, what he did and said was at least apparently within the scope of his authority; and knowledge on his part would be knowledge on the part of the company.

5. PRINCIPAL AND AGENT: unauthorized acts: ratification: knowledge.

The defendants object to Instruction 13, which reads as follows:

"If you find the plaintiff entitled to recover in this action against either one or both of the defendants, then the amount of recovery you should allow against each defendant or defendants as you find a verdict against, should be the amount of money you find said plaintiff paid for the note in controversy, together with 6 per cent interest per annum from the 21st day of November, 1919, to this date."

It is insisted that this instruction does not state the proper measure of damages. To understand the force of this objection, it will be necessary to state some additional facts from the record. The undisputed testimony is that the plaintiff, before the bringing of this action, sued Jenks on this note. Jenks made defense, and succeeded in defeating plaintiff's recovery thereon. It therefore follows that, as against the maker of this note, plaintiff bank can realize nothing. Under the evidence as it stood before the jury, they could reach no other conclusion than that it was worthless.

6. DAMAGES: measure of damages: instructions: assumption of fact.

While it is the general rule, in actions of this kind, that the measure of damages is the difference between what the

property was actually worth and what it would have been worth had it been as represented, yet, as applied to the facts in this case, had that measure of damages been given to the jury in place of the one that was given, the jury could have reached no other verdict than the one it did. Therefore, the giving of this instruction was error without prejudice.

This disposes of all material questions raised in the case, and we are unable to find any prejudicial error to the defendants.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.